**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-02523-CMA-SKC

PACIFIC OCEAN ALAMEDA, LLC,

      Plaintiff,

v.

AMGUARD INSURANCE COMPANY, and
WESTGUARD INSURANCE COMPANY,

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Plaintiff Pacific Ocean Alameda, LLC's Motion
for Partial Summary Judgment (Doc. # 38). For the following reasons, the Court grants
in part and denies in part the Motion.

## I.    <u>BACKGROUND</u>

This is an insurance coverage case regarding hail damage to the roof of
Plaintiff's commercial property located in Denver, Colorado ("Property"). Unless
otherwise indicated, the following material facts are undisputed.

Defendant AmGUARD Insurance Company ("AmGUARD") issued Commercial
Property Insurance Policy No. PABP971863 ("Policy") to Plaintiff for a period from

August 1, 2018, to August 1, 2019. (Doc. # 38-1 at 45–89.)[1] The Policy provides

coverage for direct physical damage caused by hail to the Property, subject to all terms,

conditions, limitations, and exclusions set forth in the Policy. (Doc. # 38 at 2; Doc. # 41

at 2.) Among other provisions, the Policy provides coverage for the increased cost of

construction to add additional building materials which were not existing on the roofing

assembly at the time of loss, but which are required to comply with local ordinances or

laws ("Ordinance and Law Coverage"). (Doc. # 38 at 2–3.) The Policy limits Ordinance

and Law Coverage to $10,000. (Id. at 3.) Where existing building materials already meet

the requirements of local ordinance or law, such repairs are paid under the standard

building coverage of the Policy. (Id.)

On approximately July 4, 2019, the Property was damaged by a hailstorm. (Id. at

4.) Plaintiff provided AmGUARD notice of the hail damage. (Id.) At the time of the storm,

the Property was covered with a mechanically attached PVC roofing system consisting

of four sections comprised of the following materials:

> Section 1 – 40 MIL PVC membrane; 0.25-inch-thick gypsum board;
> Tapered Expanded Polystyrene insulation; 4-inch-thick polyisocyanurate
> insulation board; Spudded built up roof; Gypcrete roof deck; Fiberglass
> form boards.

> Section 2 – 40 MIL PVC membrane; 0.25-inch-thick gypsum board;
> Tapered EPS insulation; 2-inch thick polyiso insulation board; 2-inch-thick
> polyiso insulation board (second layer); Gravel surfaced (non-spudded)
> BUR; Poured gypsum deck (Reported by Knott to be installed over a metal
> pan).

---

[1] Because the various exhibits and appendices provided by the parties for summary judgment
briefing have different page numbering systems, the Court cites to the docket number (e.g.,
Doc. # 38-1) and the page number applied by the court docketing system in blue in the header
of each document (e.g., Doc. # 38-1 at 45).

> Section 3 – 40 MIL PVC membrane; 0.25-inch-thick gypsum board; 0.50-inch-thick foil face EPS board; 0.75-inch-thick perlite board; Spudded BUR; Gypcrete deck.
>
> Section 4 – 40 MIL PVC membrane, 0.25-inch-thick gypsum board; 2-inch-thick polyiso insulation board; Corrugated steel deck.

(*Id.* at 3; Doc. # 38-1 at 100–03.) There is no dispute that with the exception of the need for 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4, the existing building materials on each of the four sections of the mechanically attached PVC roofing system covering the Property met the ordinance and law requirements of the City and County of Denver. (Doc. # 38 at 3–4; Doc. # 41 at 2.) The estimated cost to add an additional 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4 is $5,083.79. (Doc. # 38 at 4; Doc. # 41 at 2.)

In May 2020, Plaintiff's contractor, Strong Contractors Inc., provided AmGUARD with photographs of core samples of the roof illustrating the existing building materials below the mechanically attached PVC roofing system. (Doc. # 38 at 4; Doc. # 38-3 at 16–37.) For its part, AmGUARD retained William Templeton of Rimkus Engineering to inspect Plaintiff's roof. (Doc. # 41 at 5.) On July 10, 2020, AmGUARD received an engineering report from Rimkus Engineering in which Mr. Templeton recommended that the PVC roof surface be replaced as a result of hail damage. (Doc. # 38 at 4; Doc. # 38-3 at 106; Doc. # 41 at 5.) AmGUARD notified Plaintiff's insurance agent on December 9, 2020, that the mechanically attached PVC roofing system needed to be replaced. (Doc. # 38-3 at 38.) In the email, AmGUARD stated that it needed "to confirm with the Engineer that the decking & insulation portion of the roof is a code upgrade and/or will be affected when the membrane is removed." (*Id.*) The same day, AmGUARD emailed

Mr. Templeton: "Please confirm if the decking/installation will need to be replaced due to code and/or will be affected when the membrane is removed. If this is code related please draft in the estimate and label them as INCURRED." (*Id.* at 39.)

Rimkus Engineering generated an estimate on January 5, 2021, and a revised estimate on January 28, 2021; however, neither estimate specifically broke out code-related expenses. (Doc. # 41-5 at 2–8; Doc. # 41-6 at 2.) In response, AmGUARD again requested that Rimkus Engineering identify and break out the code upgrades. (Doc. # 41-6 at 2.) AmGUARD received an email from Plaintiff's contractor, Strong Contractors, on February 5, 2021, in which Strong Contractors stated that its estimate of repairs included $64,607.39 in repairs allocated to code compliance. (Doc. # 41-8 at 2.) On March 15, 2021, Rimkus Engineering provided AmGUARD a revised estimate in which it estimated the total cost of replacing the PVC roofing system to be $782,459.76. (Doc. # 38-3 at 47.) As part of that estimate, Rimkus Engineering identified certain items as "2nd layer of insulation board per William T. Templeton, Report of Findings dated June 19, 2020" and attributed $380,825.09 in repair costs to "Codes/Ordinances." (Doc. # 41-11 at 3–4.)

On June 17, 2021, AmGUARD provided Plaintiff a copy of the Rimkus estimate and notified Plaintiff that only $10,000 of the $380,825.09 in repairs allocated to Ordinance and Law Coverage could be recovered under the Policy limit. (Doc. # 38-3 at 48–49.) AmGUARD issued a payment totaling $406,634.67, which AmGUARD asserted was the replacement cost of covered damage, less the Policy's deductible and amounts attributed to Ordinance and Law Coverage. (*Id.*)

On June 28, 2021, Plaintiff notified AmGUARD that the Rimkus estimate improperly allocated over $380,000 for repairs of existing building materials to Ordinance and Law Coverage. (*Id.* at 51–52.) Plaintiff included photographs of the core samples confirming the existing materials of the roof. (*Id.* at 52, 54–55.) In addition, Plaintiff asserted that the repair estimate incorrectly used a price list from 2019 and that the increased costs of labor and materials costs should be accounted for in repair costs. (*Id.* at 51.) On August 26, 2021, AmGUARD responded and asked if "we have a contractor in place that is unable to do the work within the roughly 406k estimate?" (*Id.* at 57.) A day later, Plaintiff again requested that AmGUARD discuss the improper allocation for repairs of existing building materials to Ordinance and Law Coverage with Rimkus. (*Id.* at 58–59.)

On August 30, 2021, AmGUARD sent an email to Rimkus regarding concerns with its repair estimate, including the need to update the repair costs to reflect 2021 pricing. (*Id.* at 61.) However, AmGUARD did not request a revision of the allocation regarding Ordinance and Law Coverage. (*Id.*) Rimkus provided a revised estimate on September 3, 2021, totaling $925,702.65. (*Id.* at 62–69.) The September 3, 2021 estimate used a material price list from August 2021 and allocated $451,373.71 to Ordinance and Law Coverage. (*Id.*) On October 4, 2021, AmGUARD provided Plaintiff with a copy of the revised estimate and informed Plaintiff that it would issue a supplemental payment totaling $77,694.27. (*Id.* at 103.)

Plaintiff initiated this lawsuit on September 16, 2021. (Doc. # 1.) In its Complaint, Plaintiff asserts three claims for relief: (1) breach of contract; (2) statutory unreasonable

delay and denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and -1116; and (3) common law bad faith. (*Id.*)

While this litigation was pending, on October 31, 2022, AmGUARD received a second engineering report from Golden Forensics. (Doc. # 38-1 at 94.) That report confirmed that with the exception of the need for 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4, the existing mechanically attached PVC roof assembly materials met the requirements of ordinance and law for the City and County of Denver. (Doc. # 38-2 at 62–67.) On November 1, 2022, AmGUARD provided Plaintiff with a copy of the Golden Forensics expert report and three estimates for replacement of the PVC roofing system in the following amounts:

| Estimate | Total | ACV | Ordinance/Law | Green Roof Contribution |
|----------|-------|-----|---------------|-------------------------|
| One | $1,327,734.13 | $1,256,907.25 | $5,083.79 | $40,000 |
| Two | $1,020,524.51 | $952,737.16 | $5,083.79 | $40,000 |
| Three | $1,207,397.21 | $1,142,533.79 | $5,083.79 | $40,000 |

(Doc. # 38 at 7.) The three estimates materially differ only as to the type of decking installation required for the replacement roofing system: the first estimate uses a method of fastening a metal deck to the existing framing; the second uses a method of adhering the replacement membrane to the existing gypsum decking; and the third uses a method of fastening CDX plywood deck to the existing roof framing. (*Id.*) There is no dispute that Golden Forensics calculated the costs attributable to Ordinance and Law coverage at $5,083.79. (Doc. # 38 at 4, Doc. # 41 at 2.)

Plaintiff filed the instant Motion for Partial Summary Judgment on November 11, 2022. (Doc. # 38.) Therein, Plaintiff moves for summary judgment on its breach of

contract and statutory bad faith claims. Defendants filed a Response (Doc. # 41), and Plaintiff followed with its Reply (Doc. # 42.) The matter is now ripe for review.

## II.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

### III.   DISCUSSION

#### A.   BREACH OF CONTRACT

The Court will first address Plaintiff's argument that it is entitled to summary judgment on its claim for breach of insurance contract. (Doc. # 38 at 8.) Plaintiff contends that AmGUARD has breached the insurance contract by paying only $484,328.94 in actual cash value payments for the roof replacement based on an improper allocation of over $430,000 in repairs as "Ordinance and Law Coverage" in the Rimkus report, despite AmGUARD's most recent expert estimating that the total repair cost for the roof is between $952,737.16 to $1,256,907.25 with only $5,083.79 allocable to Ordinance and Law Coverage.

Under Colorado law, a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2)

performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

The Court finds that Plaintiff has met its burden of establishing each of these elements. First, it is undisputed that Plaintiff and AmGUARD are parties to a valid and enforceable insurance contract which provides insurance coverage for direct physical damage caused by hail to Plaintiff's property. (Doc. # 38 at 2; Doc. # 41 at 2.) There is also no dispute that Plaintiff performed under the contract by paying the premium pursuant to the insurance contract and notifying AmGUARD of the loss. (*Id.*) With respect to AmGUARD's failure to perform, it is undisputed that (1) with the exception of the need for 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4, the existing building materials on each of the four sections of the mechanically attached PVC roofing system met the ordinance and law requirements of the City and County of Denver; (2) the estimated cost to add an additional 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4 totals $5,083.79; (3) AmGUARD's most recent estimates for replacement of the roof range between $952,737.16 to $1,295,907.25; (4) those estimates include only $5,083.79 allocated to repairs to meet ordinance and law requirements; (5) the Policy includes a $10,000 limit for Ordinance and Law Coverage; and (6) to date, AmGUARD has paid only $484,328.94 to Plaintiff for the roof replacement. Accordingly, it is undisputed that AmGUARD owes at least $468,408.22 in additional actual cash value benefits on the

claim and that Plaintiff has sustained breach of contract damages in at least that amount. (Doc. # 38 at 11.)

Defendants fail to present a genuine dispute of material fact precluding summary judgment on Plaintiff's breach of contract claim. Although Defendants argue vaguely that "multiple experts and consultants have calculated code-related costs differently in this case" (Doc. # 41 at 9), Defendants do not dispute that the existing roofing materials were in compliance with Denver ordinances, with the exception of 1,000 square feet of 3.50-inch-thick polyiso insulation board on Roof Section 4. *Compare* (Doc. # 38 at 3–4), *with* (Doc. # 41 at 2). Defendants also do not dispute that AmGUARD received a second engineering report from Golden Forensics on October 31, 2022, which estimated code-related repair costs to be only $5,083.79. (Doc. # 41 at 2.) Tellingly, Defendants do not even argue that code-related costs are actually significantly higher than the $10,000 Ordinance and Law Coverage limit in the policy. *See* (*id.* at 9.)

Instead, Defendants merely cite the principle that summary judgment should not be granted where doing so requires the court to resolve conflicting expert testimony. (*Id.*); *see, e.g.*, *Sipp v. Unumprovident Corp.*, 107 F. App'x 867, 873 (10th Cir. 2004) (unpublished) ("[S]ummary judgment is not advisable in situations in which there is a conflict in expert testimony, even when the evidence leans one way."). The Court is unpersuaded because Defendants do not identify any "conflicting" expert testimony that creates a genuine dispute of material fact as to the existing roofing materials or Defendants' failure to pay at least $430,000 in repair costs improperly allocated to Ordinance and Law Coverage in the Rimkus estimate. Moreover, Plaintiff has provided

evidence that Defendants acknowledge the improper allocation in the Rimkus Engineering estimate, including deposition testimony in which AmGUARD's internal estimator Anthony Cariot conceded that the Rimkus repair estimate allocations were wrong and stated that he believed only $17,000 should be allocated to code, rather than over $430,000. (Doc. # 42-1 at 4.) As such, the Court finds that Defendants have not met their burden to "set forth specific facts showing that there is a genuine issue for trial" as to whether Defendants breached the insurance contract by improperly allocating over $430,000 in repair costs as Ordinance and Law Coverage and failing to pay that amount. *See Anderson*, 477 U.S. at 256; *see also Jaramillo*, 680 F.3d at 1269 (observing that although courts must "construe the evidence in the light most favorable to the non-movant, to avoid summary judgment, a nonmovant must provide significantly probative evidence that would support a verdict in [its] favor").

For these reasons, the Court concludes that Plaintiff is entitled to summary judgment on its claim for breach of insurance contract. However, the Court agrees with Defendants that because "experts and consultants have calculated code-related costs differently in this case," it is more appropriate to reserve the issue of the *amount* of damages for the jury. *See, e.g.*, *Hanover Ins. Grp. v. iCarpets, Inc.*, No. 16-cv-01013-RBJ, 2017 WL 6524657, at *3–4 (D. Colo. Dec. 21, 2017). Plaintiff states that because AmGUARD has presented three repair options, the jury should determine "which methodology of repair provides for like kind and quality replacement of the mechanically attached PVC roofing system" in order to properly assess damages. (Doc. # 38 at 11.) In the interim, Plaintiff requests entry of judgment of the lower repair estimate totaling

$468,408.22 while reserving the right to increase the amount owed following the jury's assessment of repair options. Because a factual dispute exists as to the total replacement cost of the roof, the Court finds it more appropriate to reserve the issue of damages for the jury.

**B.     UNREASONABLE DELAY OR DENIAL OF INSURANCE BENEFITS**

Plaintiff also moves for summary judgment on its claim that AmGUARD unreasonably delayed or denied payment of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and -1116. (Doc. # 38 at 12.) The Court finds that there are genuine factual disputes which preclude summary judgment on this claim.

To establish a claim for unreasonable delay or denial of benefits, a plaintiff must prove that "the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115. "What constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury. However, in appropriate circumstances, as when there are no genuine issues of material fact, reasonableness may be decided as a matter of law." *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 759 (Colo. App. 2012). In evaluating reasonableness, Court may consider an array of factors, including various types of unfair claim settlement practices as recited in Colo. Rev. Stat. § 10-3-1104(h), industry standards, and whether the insured's claim was "fairly debatable." *See Copper Oaks Master Home Owners Assoc. v. Am. Family Mut. Ins. Co.*, 416 F. Supp. 3d 1115, 1129 (D. Colo. 2019) (citing *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1225–29 (10th Cir. 2016)).

Plaintiff argues that it is entitled to summary judgment on its statutory bad faith claim because "it is undisputed that AmGUARD knew, or should have known, the composition of the building materials that existed below Plaintiff's mechanically attached PVC roofing system" as early as May or July 2020. (Doc. # 38 at 14.) Accordingly, Plaintiff contends that AmGUARD's allocation of over $380,000 in repairs as Ordinance and Law Coverage in June 2021, pursuant to the Rimkus estimate, was unreasonable based on AmGUARD's knowledge of the existing roof composition that met the ordinance requirements for the City and County of Denver. (*Id.*)

Viewing the evidence in the light most favorable to AmGUARD, the Court finds there to be genuine disputes of material fact precluding summary judgment on Plaintiff's statutory unreasonable delay claim, including, but not limited to:

- whether AmGUARD acted diligently in requesting that Rimkus Engineering issue an estimate identifying code-related costs;

- whether AmGUARD reasonably relied on Rimkus's March 15, 2021 revised estimate which identified only 2" of existing insulation and attributed $380,825.09 in repair costs to "Code/Ordinances";

- whether AmGUARD reasonably relied on Rimkus's later estimate attributing $484,329.94 to "Codes/Ordinances";

- whether and for how long the allocation of repair costs to Ordinance and Law Coverage was up for debate on the basis of conflicting engineering reports; and

- whether AMGUARD knew or should have known that Plaintiff's existing roof materials largely met the requirements ordinances of the City and County of Denver on the basis of emails and photographs from Plaintiff's contractor, engineer, and counsel illustrating existing roofing materials in May 2020, July 2020, and June 2021.

Because of these disputes of material fact, summary judgment is not appropriate on Plaintiff's claim for statutory unreasonable delay of benefits. It is for the jury to weigh the evidence and determine whether AmGUARD had a reasonable basis to delay payment of the claim.

## IV.   CONCLUSION

For the foregoing reasons, it is ORDERED as follows:

- Plaintiff's Motion for Partial Summary Judgment (Doc. # 38) is GRANTED IN PART and DENIED IN PART as set forth in this order. It is GRANTED with respect to Plaintiff's first claim for breach of contract, with the issue of the amount of damages reserved for determination at trial. It is DENIED as to Plaintiff's second claim for statutory unreasonable delay of benefits.

DATED:  April 14, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge

14